**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL PENSION FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL WELFARE FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** | ) | |
| **AND WELFARE FUND, and CATHERINE** | ) | |
| **WENSKUS, not individually but as** | ) | |
| **Administrator of the Funds,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.   25-cv-5943** |
| **v.** | ) | |
| | ) | **Judge:** |
| **CAMDEN SERVICES, LLC., an Illinois limited** | ) | |
| **liability corporation, ITA SHEERAN,** | ) | |
| **individually, and JOHN BRIDGES, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, and Sara S. Schumann, and for their Complaint against Camden Services, LLC, Ita Sheeran and John Bridges, state as follows:

### COUNT I

### (Failure to Pay Benefit Contributions)

For a cause of action against Camden Services, LLC:

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Camden Services, LLC (hereinafter 'Camden Services" or the "Company"), is an Illinois corporation.  The Company does business within this District, and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union, Laborers' Local Union No. 118 and the Company entered into an Independent Construction Industry Collective Bargaining Agreement on November 8, 2013 which binds the Company to all existing and successive area-wide Collective Bargaining Agreements, the most recent of which went into effect on June 1, 2021 ("Agreement").   A copy of the Company's Independent Construction Industry Collective Bargaining Agreement which adopts and incorporates the area-wide negotiated Collective Bargaining Agreements and also binds the Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.

7.     The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.  Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA" or collectively

with all other funds identified in this Paragraph as "Ancillary Funds") to act as an agent in the collection of contributions due to those Funds.

8.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  The Company is obligated to pay between 10% and 20% liquidated damages on late-paid contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)     failed to submit and/or pay benefit reports and contributions for the period of January 2025 forward, thereby depriving the Pension Fund of information and income necessary to administer the Fund;

(b)     failed to submit and/or pay benefit reports and contributions for the period of January 2025 forward, thereby depriving the Welfare Fund of information and income necessary to administer the Fund;

(c)     failed to submit and or pay benefit reports and contributions for the period of January 2025 forward, thereby depriving the Retiree Welfare Fund of information and income necessary to administer the Fund;

(d)     failed to submit benefit reports and contributions for the period of January 2025 forward, thereby depriving the Training Fund of information and income necessary to administer the Fund; and

(e)     failed to submit benefit reports and contributions for the period of January 2025 forward, thereby depriving the Ancillary Funds of information and income necessary to administer the Funds.

12.     The Company failed to submit and timely pay benefit reports for the period September and October 2024.  Accordingly, the Company owes $992.38 in accumulated liquidated damages on those late payments.

13.     The Company's actions in failing to submit timely payment of benefit contributions reports violates Section 515 of ERISA, 29 U.S.C. §1145.

14.     The Company's actions in failing to make timely reports and contributions and failing to obtain a bond violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185 and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

15.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of the Plaintiffs and against Camden Services, LLC as follows:

a.      ordering the Company to submit and pay benefit reports and contributions for the period of January 2025 forward and to submit to an audit on demand for the period of October 1, 2022, forward;

b.      entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the audit including contributions, interest, liquidated damages and audit costs; and

c.      awarding Plaintiffs its reasonable attorneys' fees and costs; and

d.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

For a cause of action against Camden Services, LLC:

16.      Plaintiffs reallege paragraphs 1 through 15 of Count I.

17.      Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

18.      Dues reports and contributions are due by the 10th day following the month in which the work was performed.  Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

19.      Notwithstanding the obligations imposed by the Agreement, the Company failed to withhold and/or submit payment of dues for the period of January 2025 forward thereby depriving

the Union of information and income.

20.     Pursuant to the Agreement, Company owes liquidated damages on all late or unpaid dues plus audit costs, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Camden Services, LLC ordering the Company to submit payment of union dues for the period of January 2025 forward, submit the Company's books and records to an audit on demand for the period of October 1, 2022 forward, enter judgment on all amounts owed for the period of October 1, 2022 forward, together with all liquidated damages, audit costs, and attorneys' fees and costs; and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Defaulted Installment Note)

For a cause of action against Defendants Ita Sheeran and John Bridges:

21.     Plaintiffs reallege paragraphs 1 through 20 as though fully set forth herein.

22.     The Court has supplemental jurisdiction over this Count pursuant to 28 U.S.C. §1367(a).

23.     The Company entered an Installment Note ("Note") to pay contributions and dues owed for the period of November 2023 through May 2024.  A true and accurate copy of the Note is attached hereto as Exhibit B.

24.     Defendants Ita Sheeran and John Bridges entered into a Guaranty of Payment and Indemnification Agreement ("Guaranty") agreeing to Guaranty the amounts due on the Note as well as any contributions that were due or became due while payments were due on the Note.  A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

25.     The Company defaulted on the Note.  Specifically, the Company failed to timely pay three of the scheduled installments due on the Note and failed to pay the last three installments due on the Note.

26.     Under the terms of the Note and Guaranty, Plaintiffs are entitled to a judgment in their favor and jointly and severally against Defendants Ita Sheeran and John Bridges in the amount of $30,446.04 representing payments and liquidated damages due on the Note.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs and against Defendants Ita Sheeran and John Bridges:

(a)     For all accelerated payments due on the Installment Note including liquidated damages and interest on any late or unpaid payments;

(b)     Plaintiffs' reasonable attorneys' fees and costs; and

(c)     any and all other legal and equitable relief the Court deems just and appropriate.

## COUNT IV

### (Enforcement of Guaranty)

For a cause of action by Plaintiffs against Defendants Ita Sheeran and John Bridges:

27.     Plaintiffs reallege paragraphs 1 through 26 as though fully set forth herein.

28.     The Court has supplemental jurisdiction over this Count pursuant to 28 U.S.C. §1367(a).

29.     Pursuant to the terms of the Guaranty, Defendants Ita Sheeran and John Bridges are jointly and severally obligated to pay the Funds all amounts due as set forth in Counts I and II of this Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of the Funds and against Defendants Ita Sheeran and John Bridges jointly and severally for all amounts due from the Company as set forth in Counts I and II of this Complaint.

May 28, 2025                                    Chicago & Vicinity Laborers' District Council
                                               Pension and Welfare Funds,

                                               By:  /s/ Patrick T. Wallace

Patrick T. Wallace
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson, Suite 1415
Chicago, IL  60604
(312) 692-1497



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and it waives any right it may have to terminate this agreement based upon the number of persons employed.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, no later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDCA/MDC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence this Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitrator, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: __11 / __ __, 20 _13_

ACCEPTED:

Laborers' Local Union No. _____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: _____

(Employer)

FEIN No.: _____

By: _____
(Print Name and Title)

_____
(Signature)

_____
(Address)

_____
(City, State and Zip Code)

_____
(Telephone/Telefax)

_____
(Email Address)

EXHIBIT A

Docusign Envelope ID: 89AF29EA-7FA8-4766-A132-502F0374BC70

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Chicago & Vicinity Laborers' District Council Pension Fund ("Pension Fund"), the Chicago & Vicinity Laborers' District Council Welfare Fund ("Welfare Fund"), and the Chicago Laborers' District Council Retiree Health and Welfare Fund ("Retiree Welfare Fund" or collectively with the Pension and Welfare Funds as the "Funds"), the parties of the first part, and Camden Services, LLC (hereinafter "Camden Services" or the "Company"), the party of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"), where under it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund and other related ancillary funds, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions and dues owed to the Funds pursuant to reports submitted by the Company to the Funds and District Council for the period of November 2023 through May 2024;

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the District Council, for the period of November 2023 through May 2024:

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the District Council, together with liquidated damages, and interest, as set forth below, and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay a total of Fifty-One Thousand Seven Hundred Sixty and 50/100 Dollars ($51,760.50) with a down payment of Eleven Thousand Five Hundred Seventy-Two and 68/100 Dollars ($11,572.68) due at the time the Note is signed as a down payment and six equal monthly installments of Six Thousand Six Hundred Ninety-Seven and 97/100 Dollars ($6,697.97) commencing on September 1, 2024 with each subsequent payment due on the first of each successive month through February 1, 2025. In the event the first day of the month falls on a weekend or federal holiday the payment shall be due on the next business day.

2. The Company will remit all payments by wire or by a check made payable to the "Laborers' Pension and Welfare Funds" delivered to the attention of Alicia Grossi at the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

3. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds and District Council reserve the right to conduct an audit, in accordance with the terms of the CBA and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

4. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, all amounts described in paragraph 1 herein shall accelerate and immediately become due. The Company also agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

5. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligation to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed and maintain the required surety bond, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note. The Company must also complete and submit monthly Job Notice Cover Sheets and individual Job Notices on the forms provided by the Funds by the first day of each month for the duration of this Note. Failure to comply with this term will result in a default on this Note and enable the Funds to accelerate all amounts due on this Note.

6. The Parties acknowledge and agree that any payments to the Union provided for in this Installment Note fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement, or release of a claim, complaint, grievance, or dispute in the absence of fraud or duress.

EXHIBIT B

Docusign Envelope ID: 89AF29EA-7FA8-4766-A132-502F0374BC70

7. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

8. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the ___116th___ day of the August, 2024.

**Camden Services, LLC**

By: (x) _____

Title: (x) ___president___

**Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund and Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund.**

By: _____

_____Catherine Wenskus, Administrator___

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _____ by the undersigned, Ita Sheeran and John Bridges, (the "Guarantors"), to and for the benefit of **THE CHICAGO LABORERS' DISTRICT COUNCIL PENSION FUND, THE CHICAGO LABORERS' DISTRICT COUNCIL WELFARE FUND, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (the "District Council") and any related ancillary Funds to which Camden Services, LLC is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, Camden Services, LLC (hereinafter the "Company") has agreed to pay a total of **$51,760.50** to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of an Installment Note ("Note");

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantors execute this Guaranty; and

WHEREAS, the Guarantors have a financial interest in the Company and will be benefited by the Note;

NOW THEREFORE, in consideration of the foregoing, the Guarantors agree as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post- judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantors hereunder (the obligations of Guarantors under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantors also agree to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all audits that have been issued or are issued covering any time period prior to the issuance of the Note, during the Note, or issued after the Note is paid in full but covering any time period prior to or during which Note payments were due, delinquent or being paid and including, but not limited to, interest, liquidated damages, audit costs, attorneys' fees and costs.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantors.

3. <u>Waivers.</u> Guarantors waive diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantors shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantors, until all of the Company's obligations shall have been fully paid and performed.

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantors expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off, or to any other rights that could accrue to a surety against a

**EXHIBIT C**

principal, to the Guarantors against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the Guarantors may have or hereafter acquire against the Company in connection with or as a result of Guarantors' execution, delivery and/or performance of this Guaranty or the Note. The Guarantors agree that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantors by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantors' obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership, or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantors until all of the Company's Obligations under the Note outstanding, and any amounts that were due or came due during the Note, shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The Guarantors assume full responsibility for keeping the Funds fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agree to pay and reimburse the Funds for all costs and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantors will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantors are cumulative.

12. Binding Effect. This Guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantors and Guarantors' heirs, legal representatives, successors and assigns. In the event of the death of either of the Guarantors, the Obligations of such deceased Guarantors shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the Obligations of the undersigned hereunder, who shall continue to remain bound to perform under and with respect to this Guaranty as though there had been no such assignment.

13. Default. The Guarantors hereby authorize irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgment against Guarantors, after service of notice of the claimed default, in favor of the Funds for such

amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantors agree to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgment, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantors make to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantors have full right, power and authorization to enter into this Guaranty and carry out his/her Obligations hereunder.

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantors of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantors or any of his/her assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantors, threatened against or adversely affecting any Guarantors at law or in equity or before or by any governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantors. Guarantors are not in default with respect to any judgment, order, writ, injunction, decree, rule, or regulation of any court.

(d) <u>Enforceability.</u> This Guaranty is a legal, valid and binding obligation of Guarantors, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as Registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, or (V) sent via email; and (b) addressed as follows:

In Case of Guarantors:

In Case of the Funds:

_____

_____

_____

_____

_____

Fund Counsel
**Patrick T Wallace**
Laborers' Pension & Welfare Funds
111 West Jackson Boulevard
Suite 1415
Chicago, IL 60604-3868
PatrickW_@chilpwf.com

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantors' attorney. _____, But the failure by the Funds to send courtesy copies to Guarantors' attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantors of any Obligations under this Guaranty.

16. <u>Additional Waivers.</u> Guarantors expressly and unconditionally waive, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief,

(II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantors, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Funds' sole discretion and election, only in courts having a situs within the County of Cook, State of Illinois, Eastern Division. Guarantors hereby waive any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of Guarantor.</u> In the event of the death of either Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his or her death, Guarantor's estate assumes the Obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such Obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the undersigned Guarantors have executed this instrument as of the date and year first above written.

Ita Sheeran, individually

_Ita Sheeran_
Print name

_Ita Sheeran_
Signature

Social Security Number

Date: _8/16/2024_

John Bridges, individually

Print name

Signature

_John Bridges_
Social Security Number

Date: _08/16/2024_

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR:

_____

Dated: _____